**HINES, Director General of Railroads, v. RUSH et al. (No. 8037.)**

(Court of Civil Appeals of Texas. Galveston. March 10, 1921.)

**1. Principal and agent ⚙➡124(1)—Whether person who signed delivery freight receipt was agent of transfer company employed by shipper to get goods held for jury.**

In shipper's action against railroad for loss of goods during transportation, in which the undisputed evidence showed that a transfer company had been employed by the shipper to receive goods from the railroad, that the transfer company had sent its employee to get the goods, and that employee did get what he supposed to be the entire shipment, the question of whether such employee was an agent of the transfer company so as to warrant admission of his testimony that he signed delivery freight receipt, and of the receipt itself, *held* for the jury.

**2. Principal and agent ⚙➡121—Agent's testimony that he signed instrument as principal's agent admissible.**

In action against a railroad for loss of goods involving an issue of whether the goods had been delivered to a transfer company, shown by undisputed evidence to have been employed by plaintiff to receive the goods, testimony by transfer company's employee, who received the goods from the railroad, that he signed delivery freight receipt as the transfer company's agent, *held* admissible. ·

**3. Principal and agent ⚙➡21, 121—Agent's testimony admissible to prove parol agency.**

Though agency cannot be shown by extrajudicial declarations of agent, the testimony of an agent in court is competent to prove a parol agency, and to establish the nature and scope of the agent's authority.

**4. Appeal and error ⚙➡880(2)—Direction of verdict as to some of defendants held harmless as to other defendant.**

In shipper's action for loss of goods against a railroad and against transfer and warehouse companies, to which goods were subsequently delivered, in which the only issue as to the railroad was whether the goods had been delivered to the transfer company, shown by undisputed evidence to have been employed by shipper to receive goods from the railroad, instruction of a verdict for the transfer and warehouse companies *held* harmless as to the railroad, since the railroad could not be affected thereby.

Appeal from Harris County Court; Roy F. Campbell, Judge.

Action by J. H. Rush against Walker D. Hines, Director General of Railroads, and others. Judgment for plaintiff against the named defendant, and he appeals. Reversed and remanded.

Wm. H. Wilson, Walter F. Woodul, and Dabney & King, all of Houston, for appellant.

Atkinson & Atkinson, of Houston, for appellees.

LANE, J. This suit was brought by appellee J. H. Rush against Walker D. Hines, Director General of Railroads, Westheimer Transfer Company, and Westheimer Warehouse Company, to recover the sum of $277.-50, the value of two bundles containing four rugs, one piece of linoleum, and one piece of rubber matting. He alleged that he delivered to Director General Hines at Philadelphia, in the state of Pennsylvania, a certain lot of household furniture, among which were the aforesaid two bundles, to be shipped to Houston, Tex.; that said goods were received and shipped by said Director General, and reached Houston over the line of the International & Great Northern Railroad Company on or about the 8th day of October, 1919; that upon the arrival of said goods at Houston he employed the defendant Westheimer Transfer Company to take charge of them and deliver them to defendant Westheimer Warehouse Company, to be stored by said last-named company for him. He then alleged the value of the two bundles marked "Rug Bundles" to be $277.50. He alleged, further, that although he had received from said warehouse company a portion of said goods, he had never received the two "rug bundles," though he had made demand therefor from each of the defendants, and that by reason of the failure of the defendants to deliver said bundles he had been damaged in the sum of $277.50 for which he prayed judgment. All the defendants answered by general denial.

The undisputed evidence shows that the goods were shipped from Philadelphia, and reached Houston as alleged by appellee; that appellee delivered to the Westheimer Warehouse Company the bill of lading issued to him by Director General Walker D. Hines, which contained an itemized list of the goods shipped; that upon instructions from appellee the defendant Westheimer Transfer Company called upon the local freight agent of Director General Hines at Houston, Tex., for the goods, for the purpose of receiving and hauling them to the warehouse of the Westheimer Warehouse Company; that on or about the 8th day of October, 1919, one Thomas Harris, employed by the Westheimer Transfer Company to haul freight, together with another as helper, called at the depot of the International & Great Northern Railroad Company for the goods of appellee Rush, and that what purported to be the entire shipment was delivered to him by the railroad agent, and that he then delivered them to the Westheimer Warehouse Company; that after the goods were stored with the warehouse company appellee employed one S. G. Hobbs to call for and haul his goods from the warehouse of the Westheimer Warehouse Company to his place of residence, and that Hobbs did receive and deliver all of said goods except the two "rug bundles."

⚙➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Both J. H. Rush and his wife testified that the two "rug bundles" had never been delivered to them. J. H. Rush also testified that although he made inquiry of the Westheimer Warehouse Company as to the missing bundles, they made no satisfactory explanation about them, and hence he presented his claim to each of the defendants, and finally brought this suit.

A. D. Holden testified that at the time the goods of J. H. Rush were received at the depot of the International & Great Northern Railroad Company at Houston he was the local agent of said railway company; that in about one week after the goods were delivered to the freight hauler of the Westheimer Warehouse Company, Mr. Westheimer came to him, and stated that two bundles of rugs were missing, and had not been delivered by the railroad to his driver; that they looked through the railroad warehouse, and failed to find the lost bundles; and that then Mr. Westheimer asked him to change the freight delivery receipt, which showed the delivery of the two missing bundles to his driver, so as to show nondelivery, and that he told Mr. Westheimer that he could not make such change, as the delivery sheet showed no exception, and that he could not make the requested change.

The witness Thomes Harris testified that during the month of October, 1919, he was employed by the Westheimer Transfer Company in hauling freight; that he remembered going with a helper to the freight depot of the International & Great Northern Railroad Company to get a shipment of goods consigned to J. H. Rush; that he was sent there by the Westheimer Transfer Company with the paid freight bill, and was instructed to carry the household goods of J. H. Rush to the Westheimer Warehouse Company. The witness Harris was then shown a paper purporting to be a receipt signed by the witness, acknowledging receipt of the entire shipment of goods of J. H. Rush, including the two "rug bundles" in controversy. After examining the receipt the witness testified that he had signed the paper shown him. He also offered to testify that he had signed said receipt as the agent of the Westheimer Transfer Company. The receipt was then offered in evidence by the defendant Hines. To the introduction of that part of the witness' testimony that he signed the receipt as agent for Westheimer Transfer Company, and the introduction of the receipt, objections were made by the Westheimer Transfer Company and the Westheimer Warehouse Company, as shown by appellants' bill of exception No. 1, upon the following grounds: Because the witness Thomas Harris had not been shown to have been the agent of said defendant Westheimer Transfer Company or the Westheimer Warehouse Company, or either of them; that agency could not be proven by the declaration of the agent; and that there were no pleadings filed by defendant Hines alleging the execution of such receipt by the witness, Thomas Harris, as agent for either of the defendants, Westheimer Transfer Company, or Westheimer Warehouse Company, and therefore such receipt as evidence was irrelevant and immaterial. The court sustained the objections to the proffered evidence upon the grounds urged.

The case was tried before a jury. After hearing the evidence, the court instructed the jury to return a verdict in favor of the defendant Westheimer Transfer Company and Westheimer Warehouse Company, and submitted to the jury the sole question: What was the value of the two "rug bundles"? The jury found such value to be $277.50, and thereupon judgment was rendered in favor of the plaintiff, J. H. Rush, against Director General Hines, now Hines, Agent, for the sum of $277.50. Walker D. Hines, Agent, has appealed.

[1, 2] By the first and second assignments of error it is insisted that the court erred in not permitting Thomas Harris to testify that he signed the delivery freight receipt offered in evidence as agent for Westheimer Transfer Company, and in not permitting said delivery freight receipt in evidence when offered by defendant Hines. These assignments must be sustained. The undisputed evidence shows that the Westheimer Transfer Company was employed by appellee Rush to receive his goods from the railroad agent, and to haul them to the warehouse of Westheimer Warehouse Company for storage, and that to accomplish the purpose of such employment said transfer company sent its employee, Thomas Harris, to the depot to get and haul said goods, and that said employee did get what he supposed to be the entire shipment from the agent of the railroad. We think these undisputed facts, independent of the proffered testimony of the witness Harris that he was the agent of the transfer company, was sufficient to prove such agency. If, however, it was not sufficient to conclusively establish such agency, it was at least of such probative force as to require the submission of the question of agency to the jury. We are clearly of the opinion, however, that the rejected evidence was admissible, and that the court erred in holding to the contrary.

[3] While it is well settled by the decisions of this state, as well as by all authorities of which we have any knowledge, that agency cannot be shown by the extrajudicial declarations of the alleged agent, it is equally as well settled that the testimony of an agent in court is competent to prove a parol agency, and to establish the nature and scope of the agent's authority. Alamo Live Stock Com. Co. v. Heimer, 192 S. W. 591; Autrey v. Linn, 138 S. W. 197; Cunningham v. Mathews, 57 S. W. 1114; Telegraph Co. v. Kersh, 27 Tex.

Civ. App. 127, 66 S. W. 74; Clark & Skyles' Law of Agency, pp. 168, 169, and authorities there cited.

The distinction between the admissibility of declarations of the alleged agent out of court and the admissibility of his testimony. when called as a witness upon the question of agency is clearly stated in 2 Corpus Juris, 933, § 689, notes 10–16.

It follows then that if Thomas Harris was the agent of Westheimer Transfer Company to receive the goods of appellee he was authorized to receipt for said goods when delivered to him as such agent. The main, and we may add, the only, issue as between appellee Rush and appellant Hines was as to whether the two "rug bundles" in controversy were delivered to Westheimer Transfer Company, the undisputed agent of appellee Rush, and therefore the exclusion of proffered evidence was error.

Whether the bundles in controversy were delivered to Westheimer Transfer Company by appellant being, as we think, the only controverted issue of fact affecting appellant, it was highly important that he should have all the evidence bearing upon such issue go to the jury for their consideration in determining the issue, and therefore the exclusion of the proffered evidence constitutes reversible error.

[4] By the third assignment it is insisted that the court erred in instructing a verdict for the defendants Westheimer Transfer Company and the Westheimer Warehouse Company. We agree with this contention. While this was clearly error, we do not see just how this charge could affect the rights of appellant except indirectly. As before stated, the only issue affecting appellant was: Did he deliver the goods to Westheimer Transfer Company? And if that question were submitted to the jury, and they should find that appellant made such delivery, judgment should be for appellant, regardless of what judgment should be entered in favor of the other defendants.

The erroneous instructions complained of might seriously affect the right of the plaintiff, Rush, but he has not complained of the same. Indeed no one has appealed from so much of the judgment as is in favor of said defendants, and therefore neither appellee nor appellant are in a position to complain of the rendition of the same.

Having reached the conclusions above expressed, so much of the judgment as is in favor of appellee J. H. Rush against Walker D. Hines, Agent, is reversed and remanded, and so much thereof as is in favor of Westheimer Transfer Company and Westheimer Warehouse Company, not being appealed from, is undisturbed.

Reversed and remanded.